IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Veronica Oglesby, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 8:19-cv-01573-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| Professional Transportation Inc., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

This matter comes before the court on a Motion for Conditional Class Certification filed by Plaintiff Veronica Oglesby ("Plaintiff") individually and on behalf of all others similarly situated, pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (the "FLSA"). (ECF No. 15). Plaintiff seeks certification of a class of similarly situated field safety officers currently and previously employed by Defendant Professional Transportation Inc. ("Defendant"), who Plaintiff alleges have been misclassified as exempt from the overtime provisions of the FLSA. (ECF No. 15-1 at 1, 2). Defendant filed a response opposing the motion, (ECF No. 24), and subsequently filed a supplemental response after the close of discovery, (ECF No. 31). Plaintiff then filed a reply, (ECF No. 32), and this matter is now ripe for review. After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter. For the reasons set forth below, the court denies Plaintiff's Motion for Conditional Class Certification.

**BACKGROUND AND PROCEDURAL HISTORY**

Defendant is an Indiana corporation that "provides over-the-road and dedicated yard van crew transportation services to customers in the railroad industry," and Plaintiff has been employed

1

with Defendant as a field safety officer ("FSO") since October 2008. (ECF No. 1-1 at 2–3); *see also* (ECF No. 6 at 2). As an FSO, Plaintiff worked remotely out of her home and frequently traveled both in- and out-of-state to visit different branch offices. (ECF Nos. 1-1 at 3; 6 at 2, 3). At some point during her employment with Defendant, Plaintiff was promoted to her current position as a Senior Field Safety Officer ("Senior FSO"). (ECF Nos. 15-3 at 4; 31 at 1; 31-1 at 44; 32-3 at 9). The parties agree that the job description for FSOs, *see* (ECF No. 24-1 at 7–8), applies to Plaintiff's position as a Senior FSO and generally describes her duties and daily activities. Specifically, as an FSO, Plaintiff is tasked with, *inter alia*, developing training modules for drives and ensuring that training is administered according to Defendant's policies and National Safety Council Guidelines; monitoring individual branch activities through random site visits and scheduled audits; investigating accidents and analyzing accident and injury data to identify trends or problem areas in need of improvement; analyzing branch data and statistics in order to develop plans and recommendations to improve safety and efficiency; and creating policies and procedures or recommending changes to existing policies to the Director of Safety. (ECF Nos. 6 at 2–3; 24-1 at 7–8); *see also* (ECF Nos. 1-1 at 3; 24-1 at 3; 31-1 at 6–13, 16–17, 26–30, 32–34, 36–42, 44–46, 48–75, 80, 82–84; 31-2 at 4–6, 10–13; 32-2 at 5–6; 32-2 at 6).

**Putative Class Members**

Although the job description and responsibilities discussed above presumably apply to all FSOs, there is a dearth of information in the record before the court regarding the duties and day-to-day activities of any other FSOs or FSOs generally. Furthermore, despite the extensive evidence concerning Plaintiff's every-day tasks, Plaintiff herself testified that, as a Senior FSO, she has "an expanded duty to what a regular Field Safety Officer does," including "do[ing] the data analyses for the company." (ECF No. 31-1 at 45); *see also* (ECF No. 15-3 at 6). In fact,

Plaintiff acknowledged that even between herself and other Senior FSOs the day-to-day responsibilities and activities vary. (ECF No. 31-1 at 45, 76). Plaintiff also testified that she rarely works side-by-side with other FSOs, and, in fact, Plaintiff admitted that the only way she could know what other FSOs did on any given day was to look at their daily check-out emails in which they self-reported their activities for the day. (ECF No. 31-1 at 77–78); *see also* (ECF Nos. 31-2 at 7–8 (describing the check-out emails as a "self-audit of where are you spending your time" and noting that they "may not look the same for every [FSO]"); 32-2 at 8 (noting the check-out emails are completed by the FSOs with "no oversight" and "very limited follow-up")).

Indeed, the only evidence in the record regarding all FSOs, including Senior FSOs, establishes that (1) they all report directly to the Director of Safety, Bobby Vincent, (ECF Nos. 6 at 2; 15-3 at 5; 24-1 at 2; 31-1 at 4); (2) they are all classified as exempt from the overtime requirements of the FLSA, and, accordingly, Defendant does not track or keep records of the hours worked by its FSOs, (ECF Nos. 15-1 at 2, 5; 15-3 at 4, 5; 32-2 at 5); (3) Defendant has employed ten (10) FSOs, including Plaintiff, in the three-years immediately preceding the filing of this action, (ECF Nos. 32 at 1 n.1; 32-1); and (4) currently, Defendant employs only two FSOs, including Plaintiff, both of whom are classified as Senior FSOs, (ECF Nos. 31 at 2 n.1; 31-1 at 4; 31-2 at 2; 32-2 at 2, 4). Nevertheless, "[b]ased on [her] lengthy employment with [Defendant]" and "discussions with other safety officers," Plaintiff asserts that all FSOs "perform the same primary job duties," including "travel[ing] to company locations and accident sites around the country and regularly work[ing] in excess of forty hours per week." (ECF No. 15-5 at 3).

**Procedural History**

On April 30, 2019, Plaintiff commenced this action on behalf of herself and others similarly situated, seeking to recover unpaid overtime wages pursuant to the FLSA. (ECF No. 1-1).

Specifically, Plaintiff asserts that field safety officers "regularly work in excess of forty hours per week[,]" but are "erroneously classified by Defendant as exempt . . . and are not compensated in any way for hours worked over forty in a workweek." (ECF No. 1-1 at 4). In response, Defendant argues that its field safety officers, including Plaintiff, fall within the administrative exemption to the FLSA's overtime provisions, as set forth in 29 U.S.C. § 213(a)(1). (ECF Nos. 24 at 6–12; 31 at 6–21).

On July 12, 2019, the parties filed a joint Rule 26(f) Report, (ECF No. 13), consenting to the deadlines in the court's scheduling order, (ECF No. 8), which directed that discovery be completed by November 20, 2019. On September 30, 2019, less than two months prior to the end of discovery, Plaintiff filed the instant motion seeking to conditionally certify her claim as a collective action under § 216(b) of the FLSA. (ECF No. 15). Prior to the close of discovery, Defendant filed a response in opposition to Plaintiff's motion, (ECF No. 24), and, after discovery was completed, filed a supplemental response, (ECF No. 31). Plaintiff replied, (ECF No. 32), and this motion is now ripe for consideration.

## APPLICABLE LAW

Under the FLSA, a plaintiff may bring a collective action on behalf of herself and other employees that are "similarly situated" to the plaintiff. *See* 29 U.S.C. § 216(b); *Graham v. Hall's S. Kitchens, LLC*, 331 F.R.D. 619, 621 (2018). Section 216(b) of the FLSA provides:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Therefore, "FLSA class certification requires: (1) that the Plaintiffs in the class be 'similarly situated,' and (2) that the plaintiffs included in the class 'opt in' by filing with

4

the Court their consent to the suit." *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 557, 562 (E.D. Va. 2006). This collective action "mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by 'similarly situated' employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers." *Meller v. Wings Over Spartanburg, LLC*, C.A. No. 2:15-cv-2094-PMD, 2016 WL 1089382, at *4 (D.S.C. March 21, 2016). As the Supreme Court emphasized in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), the underlying purpose of a § 216(b) collective action is efficiency, and courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id*. at 170–71.

District courts, including this court and others in the Fourth Circuit, typically follow a two-step process to determine whether a plaintiff is similarly situated to putative plaintiffs. *See, e.g.*, *Meller*, 2016 WL 1089382 at *4, *4 n.2; *Graham*, 331 F.R.D. at 621; *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). In the first stage, or the "notice stage," the "court makes a threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). The "notice" phase typically occurs prior to discovery when a plaintiff moves for conditional class certification. Because the court normally has little to no evidence before it at this stage, the standard for conditional class certification is lenient. *See Meller*, 2016 WL 1089382, at *5; *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. 2012). The plaintiff has the burden of "com[ing] forward with at least some evidence indicating that this is an 'appropriate case' for collective-action status[,]" but this burden is not

5

onerous.  *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) (citation omitted).  "The plaintiff must make only a 'modest factual showing sufficient to demonstrate that the plaintiff and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at *20 (N.D. Ohio Sept. 29, 2007) (quoting *Williams v. Le Chaperon Rouge*, No. 1:07-CV-829, 2007 WL 2344738, at *2 (N.D. Ohio Aug. 14, 2007)).  Thus, courts will generally grant conditional certification and authorize notice to potential class members "where the members 'share common underlying facts and do not require substantial individualized determinations for each class member.'"  *Graham*, 331 F.R.D. at 622 (quoting *Turner v. BFI Waste Servs., LLC*, 268 F. Supp. 3d 831, 835 (D.S.C. 2017)).

In the second step, "following the conclusion of discovery, 'the court engages in a more stringent inquiry to determine whether the plaintiff class is in fact "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.'"  *Syrja*, 756 F. Supp. 2d at 686 (quoting *Rawls v. Augustine Home Health Care, Inc*., 244 F.R.D. 298, 300 (D. Md. 2007)).  At this stage, the burden remains with Plaintiff to show that the putative plaintiffs are similarly situated.  *Pelczynski*, 284 F.R.D. at 368.

This case, however, is somewhat unique and does not fall squarely within this two-step framework.  Although Plaintiff only seeks conditional class certification, the case is clearly beyond the point of the notice analysis that typically occurs in step one, as set forth above, because the present motion was not filed until less than two months before discovery closed.  Indeed, when the briefing on this motion was complete, discovery had long-been concluded.  Furthermore, it is undisputed that Plaintiff failed to move for "notice" and conditional certification prior to

discovery.  "The rationale underlying the fairly lenient standard—*i.e.*, that plaintiffs have not had time to conduct discovery and marshal their best evidence—'disappears once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures.'" *Dawkins v. GMAC Ins. Holdings, Inc.*, No. 3:03-cv-322-J-99HTS, 2005 WL 8159667, at *7 (M.D. Fla. Sept. 1, 2005) (quoting *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004)).  Accordingly, it is appropriate in this case for the court to apply the more stringent standard of the second phase to the question now before it.  *See, e.g.*, *Berger*, 2007 WL 2902907, at *20 (applying "the stricter standard of the second phase" where discovery was complete and Plaintiff had not moved for conditional certification prior to discovery); *Dawkins*, 2005 WL 8159667, at *7 (applying "a more searching, scrutinizing standard of review" where substantial discovery had been conducted); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497–98 (D.N.J. 2000) (applying "a stricter standard" where discovery was to have been completed "well before the present motion was filed").

## DISCUSSION

The underlying question before the court is whether the members of the putative class Plaintiff seeks to certify—other FSOs employed by Defendant—are sufficiently "similarly situated" to Plaintiff such that this matter may proceed as a collective action under § 216(b).  *Id.* at 496 (quoting 29 U.S.C. § 216(b)).  In the context of an FLSA action, this court has determined "similarly situated" to mean:

> similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.  In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements or pay provisions, but their situations need not be identical.  Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination.

7

*Pelczynski*, 284 F.R.D. at 369.  In other words, "[i]n order to establish that other employees are similarly situated, Plaintiff must show that, like her, they were not paid all of the wages to which they were entitled because [they were improperly classified as exempt employees]." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005).  In this case, Plaintiff is challenging Defendant's determination that she is exempt from the overtime provisions of the FLSA.  "To determine which employees are entitled to overtime compensation under the [FLSA] depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria.  Therefore, 'similarly situated' in this case must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Morisky*, 111 F. Supp. 2d at 498.

In this case, Plaintiff has submitted no evidence as to the "nature of the job duties performed" by any other FSO beyond her own self-serving testimony which she concedes is not based on personal knowledge, but on vague hearsay statements from unspecified conversations with unidentified FSOs.  *See* (ECF Nos. 15-5 at 3; 31 at 2; 31-1 at 77–78; 32-3).  Indeed, Plaintiff essentially conceded her lack of personal knowledge as to the day-to-day responsibilities of other FSOs by acknowledging that she rarely works or interacts in-person with other FSOs and that her only way of knowing what any other FSO does on a daily basis is to review that FSO's self-reported check-out emails.  (ECF No. 31-1 at 77–78).  While court in this circuit have considered "hearsay evidence in an affidavit supporting a motion for conditional certification" under the lenient notice standard, such hearsay evidence has only been permitted "so long as it is based on personal knowledge." *McCoy v. RP, Inc.*, C.A. No. 2:14-cv-3171-PMD, 2015 WL 6157306, at *3 (D.S.C. Oct. 19, 2015).  As noted above, however, discovery is already complete, and this case is

well-past the notice phase. Thus, Plaintiff must submit more than her own self-serving testimony based upon hearsay to support her contention that there are other FSOs similarly situated to her.[1] *See, e.g.*, *Harrison*, 411 F. Supp. 2d at 870 (denying class certification where, "[o]nce the hearsay statements are stricken from [the] affidavits, there [was] scant evidence that any employee, other than Plaintiff, was not fully compensated for all the hours he or she worked" and "Plaintiff . . . offered nothing but speculation to support her belief that other . . . employees were not paid all the money to which they were entitled"); *Morisky*, 111 F. Supp. 2d at 499 (denying certification where plaintiff sought to "certify a class based upon [her] own belief as to which employees do not satisfy any of the exemption criteria—the very issue to be litigated in this action").

Moreover, the evidence Plaintiff has submitted directly contradicts her assertions that all FSOs "have the same primary job duty" and perform the same activities, (ECF No. 15-5 at 3); *see also* (ECF No. 1-1 at 4–5). Specifically, Plaintiff conceded that her duties as a Senior FSO differ, not only from those of a regular FSO, but also from the duties of other Senior FSOs. (ECF No. 31-1 at 45, 76). Plaintiff's supervisor, Mr. Vincent, further corroborated this fact noting that, while the overarching function of an FSO is "to be a consulting partner to field management[,]" each

---

[1] The court notes that Defendant served written responses to Plaintiff's interrogatories on September 3, 2019. (ECF No. 15-3). Attached to its responses, Defendant provided a list of all but one of the FSOs employed by Defendant since April 30, 2016 and their locations. *See id.* at 4 (response to Interrogatory No. 9); (ECF No. 15-2). The only FSO omitted from Defendant's original list was an individual already known to Plaintiff. *See* (ECF No. 23). After Plaintiff's counsel advised defense counsel that a name was missing from the list, Defendant served an updated list of all FSOs before October 18, 2019. *See id.* Accordingly, by September 3, 2019, and well before discovery closed on November 20, 2019, Plaintiff was aware of the names of all the potential class members and could have sought to depose or subpoena them regarding their job duties, hours worked, and exemption status. Additionally, Plaintiff's motion does not seek to nor indicates any intent to reopen discovery should the court grant conditional certification. Thus, despite ample opportunity to engage in discovery, Plaintiff has failed to adduce any evidence as to the job duties and responsibilities of other FSOs and the time to do so has now closed. Thus, even if the court were to consider Plaintiff's hearsay evidence under the less demanding notice standard and conditionally certify Plaintiff's proposed class, Defendant could move for decertification at any time and, under the more stringent standard of this second phase, Plaintiff's hearsay evidence, without more, would still be insufficient and would require decertification at that time. *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592-FDW-DSC, 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011) (noting "the Court need not certify the action and facilitate notice where, based on the same record available to it presently, it would inevitably decertify the action in a month's time").

FSO is "responsible for different branches which may have different needs" such that "[t]heir focus may vary from day to day, week to week[,] and from [FSO] to [FSO]."  (ECF No. 24-1 at 5); *see also* (ECF No. 31-2 at 7–8) (noting that the FSOs' daily check-out emails "may not look the same for every officer").  Thus, although the putative class members all held the same title as Plaintiff, this fact alone is insufficient to establish that they all performed the same duties and tasks such that they are all necessarily exempt or non-exempt under the FLSA.  *See Morisky*, 111 F. Supp. 2d at 498 (noting that "[e]ven employees who hold the same job title do not necessarily perform the same work").  Therefore, because Plaintiff has failed to provide any factual basis for her "conclusory assertion that the potential plaintiffs are similarly situated other than the fact that they worked the same position and that [Defendant] allegedly failed to properly compensate them," certification is inappropriate in this case. *Forkwa v. Symbral Found. For Comm. Servs., Inc.*, Civ. A. No. 8:11-cv-3515-AW, 2012 WL 6727134, at *2 (D. Md. Dec. 26, 2012); *see also, e.g.*, *Morisky*, 111 F. Supp. 2d at 498 (denying to certify a class where plaintiff "made no showing that [her] job responsibilities . . . are the same or similar to those of the remaining members of the proposed class" and "d[id] not even discuss the job responsibilities of the opt-in plaintiffs").

Finally, even if Plaintiff could show that she is similarly situated to the other members of the proposed class, the court would still be inclined to deny certification, in its discretion, in light of the manageability issues posed by allowing this case to proceed as a collective action.  In particular, because the claims in this case center on whether each plaintiff was properly classified as exempt and, if not, the amount of overtime hours they worked without compensation, the fact-finder will necessarily be required to conduct an individualized assessment of each plaintiff's claims.  As noted above, although the FSOs all operated under the same job description, their day-to-day activities varied such that to determine an FSO's exemption status under the FLSA would

require the fact-finder to assess the daily activities and responsibilities of that particular FSO independent of the rest of the class. *See, e.g.*, *Morisky* 111 F. Supp. 2d at 499 (quoting *Cook v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 59, 61 (D. Conn. 1997)) (noting that whether an employee is properly classified as exempt is an "extremely individual and fact-intensive [inquiry], requiring 'a detailed analysis of the time spent performing administrative duties' and a 'careful factual analysis of the full range of the employee's job duties and responsibilities[,]'" such that "[t]he individual nature of the inquiry required make[s] collective treatment improper"). Furthermore, it is undisputed that Defendant did not keep records of the hours worked by its FSOs. Thus, the only potential evidence thereof would be the FSOs' own check-out emails, if available, and testimony from the parties, which would also require the fact-finder to engage in individualized credibility assessments for each plaintiff. In light of the small number of proposed class members and the prevalence of individualized questions as to each one, the court finds that the efficiency goals underlying § 216(b) would not be met by certifying this case as a collective action. "At best, a collective action would present the same manageability difficulties that separate actions would." *Pelczynski*, 284 F.R.D. at 369. Accordingly, Plaintiff's motion for conditional class certification is denied.

## CONCLUSION

Therefore, for the reasons set forth above, Plaintiff's motion for conditional class certification (ECF No. 15) is **DENIED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain  
United States District Judge

October 13, 2020  
Anderson, South Carolina